[No. H002979. Sixth Dist. Jan. 13, 1989.]

*DEANNA M. GRAY et al., Plaintiffs and Appellants, v.
THE STATE OF CALIFORNIA, Defendants and Respondents.

---

*Reporter's Note: This case was previously entitled "Gray v. San Francisco Gun Exchange, Inc."

**COUNSEL**

E. Elizabeth Summers, Needham, Hull & Dykman, Craig Needham, Susan L. Zwick, Dawson, Rose & Passafuime and Phillip A. Passafuime for Plaintiffs and Appellants.

John K. Van de Kamp, Attorney General, Marvin Goldsmith, Assistant Attorney General, Tyler B. Pon and Michael D. Whelan, Deputy Attorneys General, for Defendants and Respondents.

**OPINION**

**ELIA, J.**—Plaintiffs, Deanna Gray, her son, and the estate of her husband, Michael Gray, sued the State of California (and others not relevant to this

appeal) for the wrongful death of Michael Gray. The trial court granted summary judgment for the state. The plaintiffs appeal.

## FACTUAL AND PROCEDURAL BACKGROUND

On January 3, 1983, Santa Cruz Deputy Sheriff Michael Gray was shot by Leslie Grover Wyman. Gray died as a result of the injuries inflicted by the shooting.

The 9-millimeter "Star" handgun which Wyman used to kill Gray was purchased by Wyman at the San Francisco Gun Exchange, Inc. The purchase transaction began on June 22, 1982, when Wyman filled out a form titled "Dealer's Record of Sale of Revolver or Pistol." This form contained certain pertinent information. First, it stated that "Falsification of information on this form is a misdemeanor." Second, it asked four questions of the purchaser. These were (1) whether the purchaser had ever been convicted of a felony; (2) whether the purchaser was addicted to the use of narcotics; (3) whether the purchaser was a patient at a mental hospital or on leave of absence from a mental hospital; and (4) whether the purchaser had ever been adjudicated by a court to be a danger to others as a result of a mental disorder or mental illness. Finally, the form asked for certain identifying information such as Wyman's place of birth and driver's license number. Wyman answered "no" to each of the four questions, completed the rest of the form and signed it. However, Wyman did not receive the handgun at this time.

The form was forwarded by the San Francisco Gun Exchange, Inc. to the California Department of Justice. The Department of Justice was to investigate Wyman's eligibility to purchase the handgun. If the Department of Justice determines that an individual is ineligible to purchase a handgun, it notifies the gun dealer.

The Department of Justice checked Wyman's California state criminal record to determine whether Wyman was eligible to purchase the handgun. The department did not discover any information indicating that Wyman was ineligible.

However, on December 5, 1973, the Board of Commissioners of Mentally Ill in South Dakota had found Wyman to be a "mentally ill" person and committed him to the South Dakota Hospital for the Mentally Ill in Yankton, South Dakota. This information was not discovered by the California Department of Justice because the department only searched Wyman's California criminal record.

On or about July 8, 1982, the San Francisco Gun Exchange, Inc. delivered the handgun to Wyman. Approximately six months later, Wyman used the gun to shoot Deputy Sheriff Gray.

Plaintiffs filed this action for wrongful death in the Superior Court for the County of Santa Cruz. Plaintiffs argue that the Department of Justice had a mandatory duty under Penal Code section 12076 to conduct an investigation which was reasonably designed to reveal whether an individual was eligible to purchase a handgun. Plaintiffs claim that the department's investigation of Wyman's California state criminal record fell short of this standard because it did not reveal Wyman's commitment for mental illness in South Dakota.

The Department of Justice filed a motion for summary judgment raising five reasons why there were no triable issues of fact. (Code Civ. Proc., § 437c.) Those were (1) the department did not owe plaintiffs a duty; (2) the department did not breach a duty; (3) any breach of duty was not the proximate cause of Gray's death; (4) the department was immune from liability and (5) plaintiffs' action was barred by the "Fireman's Rule." The trial court granted the department's motion on all five grounds and entered judgment against the plaintiffs. Plaintiffs bring this appeal.

█ In reviewing an order entered granting summary judgment, we must strictly construe the affidavits of the moving party and resolve all disputed factual issues in favor of the opposing party. (*Wynner* v. *Buxton* (1979) 97 Cal.App.3d 166 [158 Cal.Rptr. 587].) However, we must also independently determine the construction and effect of the facts as a matter of law. (*Zeilman* v. *County of Kern* (1985) 168 Cal.App.3d 1174 [214 Cal.Rptr. 746].) With these standards in mind, we next turn to the issues presented.

## DISCUSSION

The tort liability of public entities is governed exclusively by statute. (Gov. Code, § 815; *State of California* v. *Superior Court* (1984) 150 Cal.App.3d 848, 854 [197 Cal.Rptr. 914].) Government Code section 815.6, relied upon by plaintiffs, is one statute which creates a basis for imposing liability upon a public entity. It provides: "Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty."

█ Plaintiffs must meet a three-prong test to recover under Government Code section 815.6. First, plaintiffs must establish that Penal Code

section 12076 imposes a mandatory, and not discretionary, duty. (*Nunn* v. *State of California* (1984) 35 Cal.3d 616, 624 [200 Cal.Rptr. 440, 677 P.2d 846]; *Morris* v. *County of Marin* (1977) 18 Cal.3d 901, 907-909 [136 Cal.Rptr. 251, 559 P.2d 606].) Second, plaintiffs must prove that section 12076 is designed to guard against the type of injury suffered by plaintiffs. (*Ibarra* v. *California Coastal Com.* (1986) 182 Cal.App.3d 687, 692-693 [227 Cal.Rptr. 371]; *Shelton* v. *City of Westminster* (1982) 138 Cal.App.3d 610, 619-620 [188 Cal.Rptr. 205].) Finally, plaintiffs must demonstrate that the breach of the mandatory duty proximately caused their injuries. (*State of California* v. *Superior Court, supra,* 150 Cal.App.3d 848, 854; *Whitcombe* v. *County of Yolo* (1977) 73 Cal.App.3d 698, 707-708 [141 Cal.Rptr. 189].)

█ Plaintiffs argue that section 12076 of the California Penal Code imposes a mandatory duty upon the Department of Justice. Section 12076 states in pertinent part: "If the department determines that the purchaser is a person described in Section 12021 . . . of this code or Section 8100 or 8103 of the Welfare and Institutions Code, it shall immediately notify the dealer of that fact."[1]

Plaintiffs contend that Penal Code section 12076 required the department to conduct an investigation reasonably designed to reveal whether a person is eligible to possess a handgun. Plaintiffs claim the department breached this mandatory duty by limiting its investigation to Wyman's California criminal record.

We conclude that Penal Code section 12076 does not impose a mandatory duty upon the Department of Justice. Section 12076 permits the department to exercise its discretion to determine how to investigate potential handgun purchasers. There are three reasons for our conclusion.

The first reason is based upon the plain language of Penal Code section 12076. The express wording of the statute contradicts plaintiffs' claim that the Department of Justice has a mandatory duty to conduct a particular

---

[1] The version of Penal Code section 12021 in effect in July 1982 made it a public offense for the following people to possess a concealable firearm: "Any person who has been convicted of a felony under the laws of the United States, of the State of California, or any other state, government, or country, or who is addicted to the use of any narcotic drug. . . ."

The version of Welfare and Institutions Code section 8100 in effect in July 1982 provided that: "No person who is a mental patient in any hospital or institution or on leave of absence from any hospital or institution shall own or have in his possession or under his custody or control any firearms whatsoever."

The version of section 8103 of the Welfare & Institutions Code in effect in July 1982 provided that: "No person who has been adjudicated by a court to be a danger to others as a result of mental disorder or mental illness, after October 1, 1955, shall have in his possession or under his custody or control any firearm. . . ."

type of investigation into a person's eligibility to possess a handgun. Section 12076 does not describe the type of investigation required. Section 12076 merely states that the gun dealer must be notified *if* the department determines the purchaser fits within one of the excluded categories. The statute says nothing about *how* the determination should be made. The failure of the Legislature to specify what investigation is required suggests that this is a matter left to the discretion of the Department of Justice. If the Legislature had intended the department to follow a certain procedure when investigating the background of handgun purchasers, it could have so stated.

A second reason is based upon the difference between the wording of Penal Code section 12076 and the wording of statutes which courts have held to impose a mandatory duty. In cases where a mandatory duty has been imposed, the duty was phrased in explicit and forceful language. For example, in *Morris* v. *County of Marin, supra,* 18 Cal.3d 901, the court determined that section 3800 of the Labor Code imposed a mandatory duty upon counties to ensure that applicants for building permits carry workers' compensation insurance. Section 3800 states in relevant part that "every county . . . *shall require* that each applicant . . . have on file or file . . . a certificate of . . . insurance . . . ." (Italics added.) The court in *Morris* emphasized that the word "shall" demonstrated that the Legislature intended the statutory requirements to be obligatory rather than permissive. (*Morris* v. *County of Marin, supra,* 18 Cal.3d at p. 907.)

Similarly, in *Sullivan* v. *County of Los Angeles* (1974) 12 Cal.3d 710 [117 Cal.Rptr. 241, 527 P.2d 865], the court found that Penal Code section 1384 imposed upon a county a mandatory duty to release a prisoner once a criminal action was dismissed. Penal Code section 1384 provided that "[i]f the court directs the action to be dismissed, the defendant *must,* if in custody, be discharged therefrom. . . ." (Italics added.) Again, the court was persuaded by the strong language set forth in the statute. (*Sullivan* v. *County of Los Angeles, supra,* 12 Cal.3d at pp. 715-716.) Other cases decided under Government Code section 815.6 have found a mandatory duty when the statute contained comparable language. (See, e.g., *Ramos* v. *County of Madera* (1971) 4 Cal.3d 685, 693-696 [94 Cal.Rptr. 421, 484 P.2d 93]; *State of California* v. *Superior Court, supra,* 150 Cal.App.3d 848, 855; *Elson* v. *Public Utilities Commission* (1975) 51 Cal.App.3d 577, 581-582 [124 Cal.Rptr. 305].)

The language in Penal Code section 12076 strongly contrasts with the statutory language in *Morris* and *Sullivan.* In *Morris* and *Sullivan,* the statutes not only directly addressed the duty imposed, but also phrased that duty in terms such as "shall" and "must." Section 12076, by contrast, does not address the type of investigation required. It simply provides: "If the

department determines that the purchaser is a person described in section 12021 . . . of this code or Section 8100 or 8103 of the Welfare and Institutions Code, it shall immediately notify the dealer of that fact." Given the absence of any language obligating the department to institute a particular type of investigation, it seems clear that the type of investigation to be conducted is within the discretion of the Department of Justice.

Finally, we are persuaded by the statutory construction utilized in *Trewin* v. *State of California* (1984) 150 Cal.App.3d 975 [198 Cal.Rptr. 263, 41 A.L.R.4th 104] and *Johnson* v. *Mead* (1987) 191 Cal.App.3d 156 [236 Cal.Rptr. 277] in which the court interpreted a statute phrased in terms similar to Penal Code section 12076. In *Trewin,* the court considered whether section 12805 of the Vehicle Code imposed a mandatory duty upon the Department of Motor Vehicles to refuse to issue a driver's license. Section 12805 states in pertinent part: "The department shall not issue a driver's license to, or renew a driver's license, of any person . . . (e) When it is determined, by examination or other evidence, that the person is unable to safely operate a motor vehicle upon a highway . . . ." The court concluded that section 12805 imposed a mandatory duty to refuse to issue a driver's license. However, the duty only arose if the department had determined *beforehand* that an applicant could not safely operate a motor vehicle. (*Id.* at p. 981.)

A similar result was reached by the court in *Johnson* v. *Mead, supra,* 191 Cal.App.3d 156. In *Johnson,* the court stressed that the Department of Motor Vehicles had the discretion to determine whether a person was fit to operate a motor vehicle. However, once the department had exercised its discretion and determined that the applicant was unfit, the department had a mandatory duty *not* to issue or renew that person's driver's license. (*Id.* at p. 160.)

Penal Code section 12076 appears to require an analogous interpretation. It permits the Department of Justice to exercise its discretion in deciding how to investigate the background of a handgun purchaser. However, if the department determines that the individual is not eligible, it then has a mandatory duty to notify the gun dealer. This reading of section 12076 is consistent with the plain language of the statute.

Plaintiffs argue that the purpose and legislative history of Penal Code section 12076 support their position. We agree that the thrust of the deadly weapon control scheme is to prevent harm to third persons. (*Katona* v. *County of Los Angeles* (1985) 172 Cal.App.3d 53, 58 [218 Cal.Rptr. 19].) We are also keenly aware that a high percentage of homicides involves the use of firearms. In 1986 alone, 59.1 percent of all murders committed in the

United States involved the use of firearms. In 43.9 percent of those cases, a handgun was used.[2] The California Bureau of Criminal Statistics and Special Services reports that in 1987, 59.5 percent of the willful homicides in California were committed with a firearm. In fact, the proportion of willful homicides in California where a firearm was used was greater in 1987 than in any of the previous five years. In view of these statistics, the Legislature may wish to reexamine section 12076 and consider exactly how handgun purchasers are to be investigated. As it stands now, section 12076 does not delineate the type of investigation required. Whether the Department of Justice must investigate an individual's criminal and mental health background in every state, on the federal and even international level, the Legislature should clearly indicate.

We therefore find that the Department of Justice does not have a mandatory duty to conduct a particularized investigation into the background of a handgun purchaser. Penal Code section 12076 does not state the kind of investigation to be conducted and we decline to rewrite the statute to show the kind of inquiry that should be mandated.

In this case, the department investigated Wyman's eligibility to possess a handgun by checking Wyman's California criminal record. The department did not discover any fact indicating that Wyman was ineligible to possess a handgun. As a consequence, the department was not obligated to notify the gun dealer to cancel the sale. Having concluded that the Department of Justice did not have a mandatory duty to conduct a particular type of investigation, it is unnecessary for us to consider whether the duty was breached or whether the breach proximately caused Gray's death.

The judgment of the trial court is affirmed.

Agliano, P. J., and Brauer, J., concurred.

A petition for a rehearing was denied February 7, 1989, and appellants' petition for review by the Supreme Court was denied March 30, 1989. Mosk, J., was of the opinion that the petition should be granted.

---

[2] United States Department of Commerce, Statistical Abstract, table 267 at page 160 (1988 ed.).