[No. B095356. Second Dist., Div. Seven. Nov. 25, 1997.]

JAMES WASCHEK et al., Plaintiffs and Respondents, v.
DEPARTMENT OF MOTOR VEHICLES, Defendant and Appellant.

## COUNSEL

Daniel E. Lungren, Attorney General, Margaret A. Rodda, Assistant Attorney General, Richard J. Rojo and Leonard Pape, Deputy Attorneys General, for Defendant and Appellant.

Andrews & Hensleigh, Joseph Andrews and John J. Aumer for Plaintiffs and Respondents.

## OPINION

**WOODS, J.**—We hold that the State of California Department of Motor Vehicles (DMV) is not liable to a party injured by a licensed driver (Gov. Code, § 818.4)[1] when DMV had determined the driver was able "to safely operate a motor vehicle upon a highway." (Veh. Code, § 12805, subd. (c).)[2]

### FACTUAL AND PROCEDURAL BACKGROUND

On August 19, 1990, 96-year-old Emanuel Schlesinger sought renewal of his driver's license. He was examined and tested by Phillip Marcus, a DMV

---

[1]The section reads: "A public entity is not liable for an injury caused by the issuance, denial, suspension or revocation of, or by the failure or refusal to issue, deny, suspend or revoke, any permit, license, certificate, approval, order, or similar authorization where the public entity or an employee of the public entity is authorized by enactment to determine whether or not such authorization should be issued, denied, suspended or revoked."

[2]In pertinent part the section reads: "The department shall not issue a driver's license to, or review a driver's license of, any person: [¶] . . . [¶] (c) when it is determined, by examination or other evidence, that the person is unable to safely operate a motor vehicle upon a highway."

driver's license examiner with 20 years' experience. Mr. Schlesinger presented to Mr. Marcus a report of an August 10, 1990, eye examination performed by Mr. Schlesinger's private doctor. The report stated Mr. Schlesinger had cataracts in both eyes but he "should be able to drive during daytime." The report recommended a reexamination in one year.

Mr. Marcus, after examining and testing Mr. Schlesinger, determined he was able to safely operate a motor vehicle, gave him a driving test score of 94 (out of a possible 100), extended his license two years but restricted his driving to "daylight" only.

Twenty months later, on April 20, 1992, Mr. Schlesinger, while driving his automobile, struck and injured James Waschek who was lawfully in a crosswalk.

Mr. Waschek and his wife (plaintiffs and respondents) brought the instant action against Mr. Schlesinger and DMV.

Respondents reached a policy limits ($50,000) settlement with Mr. Schlesinger and he is not a party to this appeal.

On December 30, 1994, the trial court granted summary judgment to DMV. Judgment was entered March 3, 1995.

Respondents filed "new trial" and reconsideration motions. On May 15, 1995, the trial court granted respondents' "new trial" motion and ordered the reconsideration motion "off calendar as moot."

DMV again moved for summary judgment. On June 5, 1995, the trial court denied the motion.

DMV filed the instant appeal from the order granting a "new trial" to repondents. DMV also, separately, filed a petition for a writ of mandate which we ordered deferred until the determination of the instant appeal.[3]

We consider the merits.[4]

---

[3] Respondents also filed a cross-appeal from the summary judgment initially awarded DMV.

[4] There is an issue of appealability, although neither party raises it. Since there was no trial there could be no "motion for a new trial." The trial court's order vacating summary judgment for DMV more closely resembled an order granting a motion to reconsider. "[T]he net effect of the whole procedure was simply the denial of a summary judgment motion" (*Malo* v. *Willis* (1981) 126 Cal.App.3d 543, 546, fn. 2 [178 Cal.Rptr. 774]), a nonappealable order.

However, in such circumstances appellate courts have either construed the trial court's order as an appealable order granting a "new trial" (*Malo* v. *Willis, supra*, 126 Cal.App.3d

## DISCUSSION

*Summary judgment: standard of review.*

■ "Since a summary judgment motion raises only questions of law regarding the construction and effect of the supporting and opposing papers, we independently review them on appeal, applying the same three-step process required of the trial court: First, we identify the issues raised by the pleadings, since it is these allegations to which the motion must respond; secondly, we determine whether the moving party's showing has established facts which negate the opponent's claims and justify a judgment in movant's favor; when a summary judgment motion prima facie justifies a judgment, the third and final step is to determine whether the opposition demonstrates the existence of a triable, material factual issue. [Citations.]

■ "The moving party's burden on a motion for summary judgment is only to negate the existence of triable issues of fact in a fashion that entitles him to judgment on the issues raised by the pleadings; he is not required to refute liability on some theoretical possibility not included in the pleadings. [Citations.]

"What issues are material is determined mainly by the pleadings, the rules of pleading, and the substantive law relating to the particular kind of case." (*Joseph E. Di Loreto, Inc.* v. *O'Neill* (1991) 1 Cal.App.4th 149, 155-156 [1 Cal.Rptr.2d 636].)

*Governmental immunity and exceptions.*

■ Government Code section 818.4 confers immunity upon DMV when it determines whether or not to issue a driver's license. (See fn. 1.) But there is an exception. Government Code section 815.6 provides: "Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty."

The determinative question is whether or not, in issuing the subject license, DMV was under "a mandatory duty imposed by an enactment." If it was, then DMV could be liable to respondents and the trial court correctly denied the summary judgment motion. But if DMV was not under "a

543, 546, fn. 2) or treated the appeal as a petition for mandate. (See 9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 88, pp. 147-149.) We shall do the same.

mandatory duty imposed by an enactment" it could not be liable to respondents and the trial court erred in denying the summary judgment motion.

Respondents contend Vehicle Code section 12805 imposed this mandatory duty upon DMV. It provides: "The department shall not issue a driver's license to, or renew a driver's license of, any person: [¶] . . . [¶] (c) [w]hen it is determined, by examination or other evidence, that the person is unable to safely operate a motor vehicle upon a highway."

Respondents, relying upon *Trewin* v. *State of California* (1984) 150 Cal.App.3d 975 [198 Cal.Rptr. 263, 41 A.L.R.4th 104], *Johnson* v. *Mead* (1987) 191 Cal.App.3d 156 [236 Cal.Rptr. 277], *Gray* v. *State of California* (1989) 207 Cal.App.3d 151 [254 Cal.Rptr. 581], and *People* v. *Superior Court* (*Wilson*) (1993) 18 Cal.App.4th 31 [22 Cal.Rptr.2d 110], claim there is a material factual dispute concerning whether DMV "determined" Mr. Schlesinger was able "to safely operate a motor vehicle upon a highway." As we explain, respondents are mistaken.

In *Trewin*, DMV issued a license to 87-year-old Harvey Wood who, a short time later, crossed over a divider and collided with plaintiffs. Plaintiffs sued DMV and alleged that DMV, *before* issuing the subject license, *had determined* Harvey Wood was not able to safely drive. The trial court granted DMV's motion for judgment on the pleadings. The Court of Appeal reversed because plaintiffs had alleged that DMV determined Harvey Wood could not safely drive and that this determination created a mandatory duty upon DMV to deny a license to Harvey Wood.

Unlike *Trewin* where the pleadings were determinative, here the declarations and exhibits submitted in connection with the summary judgment motion are determinative. *Trewin* does not support respondents' claim.

*Johnson* v. *Mead* is similarly distinguishable. Plaintiffs alleged DMV had culpably licensed a driver who collided with their nine-year-old daughter, killing her. The complaint was ambiguous and could be read to allege that DMV, before issuing the subject license, *had determined* the driver could not safely drive. The trial court sustained DMV's general demurrer. The Court of Appeal reversed because only a special, not general, demurrer would reach the complaint's ambiguity. *Johnson* v. *Mead* does not support respondents' claim.

*Gray* supports DMV's, not respondents', position. In *Gray*, the wife and children of Deputy Sheriff Michael Gray sued the State of California contending the Department of Justice had a mandatory duty to determine if

a prospective gun purchaser was statutorily disqualified and, if so, to notify the dealer. Leslie Wyman filled out a gun purchase form, the dealer submitted the form to the Department of Justice but, not discovering that Florida, nine years earlier, had found Wyman "mentally ill," the department did not disapprove the gun sale. The dealer delivered the gun to Wyman who fatally shot Deputy Sheriff Gray with it. The trial court granted summary judgment to the state, and the Court of Appeal affirmed, stating: "Penal Code section 12076 appears to require an analogous interpretation [to Vehicle Code section 1286]. It permits the Department of Justice to exercise its discretion in deciding how to investigate the background of a handgun purchaser. However, if the department determines that the individual is not eligible, it then has a mandatory duty to notify the gun dealer. This reading of section 12076 is consistent with the plain language of the statute." (*Gray* v. *State of California, supra,* 207 Cal.App.3d 151, 157).

*Wilson* is irreconciliable with respondents' claim. Ray Campbell suffered a diabetic reaction, crossed a center line, and ran into Charles Wilson's oncoming car, injuring him. Wilson sued the state for not having revoked Ray Campbell's license. Ten months earlier Campbell had suffered a diabetic reaction and struck an abutment. California Highway Patrol Officer Bravo noted that fact in his accident report but he did not inform DMV or request DMV to reexamine Campbell's ability to drive safely.

The trial court denied DMV's summary judgment motion and DMV petitioned for a writ of mandate. The Court of Appeal issued the writ stating, "Only if DMV determines the 'person is unable to safely operate a motor vehicle upon a highway' (Veh. Code, § 12805, subd. (c)) is DMV mandated to terminate driving privileges." (*People* v. *Superior Court (Wilson), supra,* 18 Cal.App.4th 31, 36).

DMV, in support of its summary judgment motion, included the declaration of license examiner Phillip Marcus. He declared that not only had there been no determination Mr. Schlesinger was "unable to safely operate a motor vehicle" (Veh. Code, § 12805, subd. (c)) but that he, Mr. Marcus, had specifically "made the determination that he was able to safely operate a motor vehicle upon the highway."

Against this showing respondents offered evidence[5] of Mr. Schlesinger's medical disabilities as proof, not of DMV's negligence in determining Mr.

---

[5]The evidence included an August 1989 application for a disabled-person parking placard stating Mr. Schlesinger had a cardiovascular impairment, a two-year license extension issued in 1988 stating Mr. Schlesinger had "marginal skills and reflexes," and excerpts from Mr. Schlesinger's University of California, Los Angeles medical records.

Schlesinger was able to safely drive, but that DMV *had determined* Mr. Schlesinger was "unable to safely" drive. ■ As Justice Lillie has observed for this court, "When opposition to a motion for summary judgment is based on inferences, those inferences must be reasonably deducible from the evidence, and not such as are derived from speculation, conjecture, imagination, or guesswork." (*Joseph E. Di Loreto, Inc.* v. *O'Neill, supra*, 1 Cal.App.4th 149, 161). ■ Respondents' circumstantial evidence required "inferences based entirely on tortured reasoning or logic strained to the breaking point . . . ." (*O'Neil* v. *Dake* (1985) 169 Cal.App.3d 1038, 1045 [215 Cal.Rptr. 732].)

There was no disputed material fact DMV had determined Mr. Schlesinger was able to safely drive and, in its discretion, issued him a license. Its decision was cloaked in immunity. (Gov. Code, § 818.4; *Papelian* v. *State of California* (1976) 65 Cal.App.3d 958 [135 Cal.Rptr. 665]; *Department of Motor Vehicles* v. *Superior Court* (1980) 105 Cal.App.3d 537 [164 Cal.Rptr. 379]; see also *Cancun Homeowners Assn.* v. *City of San Juan Capistrano* (1989) 215 Cal.App.3d 1352 [264 Cal.Rptr. 288]; *State of California* v. *Superior Court* (1992) 8 Cal.App.4th 954 [10 Cal.Rptr.2d 527].)

### DISPOSITION

The order granting respondents a "new trial" is reversed. The matter is remanded to the trial court with directions to issue an order granting summary judgment to DMV.

Costs on appeal are awarded to appellant DMV.

Neal, J., concurred. Johnson, Acting P. J., concurred in the judgment only.

A petition for a rehearing was denied December 23, 1997.