Filed 6/26/15  Reyes v. Glendale Memorial Hospital CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| MARIA REYES, | B255302 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. EC059821) |
| v. | |
| GLENDALE MEMORIAL HOSPITAL, | |
| Defendant and Respondent | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Samantha Jessner, Judge.  Reversed.

Law offices of Vernon C. Krol, Vernon C. Krol; Law Offices of J. Grant Kennedy and J. Grant Kennedy for Plaintiff and Appellant.

Fraser Watson & Croutch and Daniel K. Dik for Defendant and Respondent.

_____

## INTRODUCTION

In this medical malpractice case, we find there is an inference that an independent contractor physician is the ostensible agent of a hospital where an injured plaintiff sought treatment, and the plaintiff reasonably did not know of the physician's independent status. Accordingly, we hold that a hospital sued for an independent contractor physician's alleged malpractice must negate the inference of ostensible agency, by establishing the plaintiff knew or should have known the physician was not the hospital's agent or employee, in order to obtain summary judgment.

On appeal, Plaintiff Maria Reyes contends Defendant Glendale Memorial Hospital (Glendale Hospital) failed to meet the foregoing burden, insofar as the hospital did not address the issue of ostensible agency in its summary judgment motion or separate statement of undisputed facts. We agree and reverse.

## FACTS[1] AND PROCEDURAL BACKGROUND

On December 17, 2011, Plaintiff presented to the emergency department, or ER, at Glendale Hospital complaining of pain in her left knee caused by a fall earlier that morning. According to her medical records, Plaintiff scored her pain level at "10/10" upon admission.

ER physician, Dr. Moustafa Moustafa, examined Plaintiff and noted she was unable to bear weight on her leg. To document his initial physical examination, Dr. Moustafa checked items on a "Glendale Memorial Hospital and Health Center CHW Emergency Physician Record" indicating Plaintiff's left foot appeared normal, non-tender with normal color and temperature; her ankle appeared normal, with "no joint swelling" and normal range of motion; and her thigh and hip appeared normal. Dr. Moustafa circled an item on the form indicating Plaintiff's gait was "not tested due to pain." And,

---

[1] We draw the undisputed material facts from the parties' separate statements. (See *Roger H. Proulx & Co. v. Crest-Liners, Inc*. (2002) 98 Cal.App.4th 182, 197-198 (*Proulx*).) Where a genuine factual dispute exists, we state the evidence admitted by the trial court in the light most favorable to Plaintiff, as the nonmoving party, in accordance with the standard of review applicable to summary judgments. (See *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 (*Aguilar*).)

under the heading "NEURO / VASC / TENDON," he checked items indicating Plaintiff had normal sensation with "no vascular compromise."

Dr. Moustafa ordered left knee and left lower extremity x-rays, which were reviewed by a radiologist, Dr. J. Kevin Mackey. Dr. Mackey listed his impressions of the left lower leg x-ray as "(1) Proximal tibial metaphyseal fracture with depressed and laterally displaced lateral tibial plateau prominent fracture fragment and (2) no associated fibula fracture evident." Based in part on these impressions, Dr. Moustafa diagnosed Plaintiff's injury as a "[left] knee plateau fracture." He ordered a long leg splint for Plaintiff, with a plan to transfer her to California Hospital Medical Center.

Soon after her admission to California Hospital Medical Center, it was discovered that the circulation in Plaintiff's left leg was compromised. She underwent vascular surgery on December 18 and 19 to restore her circulation. The surgeries were unsuccessful. On December 21, 2011, Plaintiff underwent a below-the-knee amputation. On January 6, 2012, she underwent an above-the-knee amputation.

On December 21, 2012, Plaintiff filed her initial complaint against Glendale Hospital. Plaintiff subsequently filed Doe amendments naming Dr. Moustafa and others as additional defendants. The complaint alleged Glendale Hospital and the other defendants "negligently failed to exercise the proper degree of knowledge and skill in examining, diagnosing, [and] treating" Plaintiff's knee injury, and that "[a]t all said times each defendant was the agent of each other defendant, and was acting within the course and scope of said agency."

Glendale Hospital moved for summary judgment on the ground that "the care and treatment rendered by the employees of defendant [Glendale Hospital] to [Plaintiff] complied, at all times, with the applicable standard of care." In support of the motion, the hospital submitted the declaration of its Risk Manager to authenticate the "medical chart of plaintiff MARIA P. REYES" as records "prepared and kept [by] the referenced physicians and the hospital staff in the ordinary course of business at, or near the time of the act, condition, or event as described therein." Additionally, Glendale Hospital submitted a declaration by Dr. Michael Smolens, an ER physician certified by the

3

American Board of Emergency Medicine, who opined, based on his review of Plaintiff's medical chart, that "the employees of defendant [Glendale Hospital] acted within the standard of care in the community for employees of an acute care hospital emergency department." Specifically, Dr. Smolens noted that "the triage performed was timely, thorough and appropriate to plaintiff's presenting complaints"; "[t]he triage nurse obtained a thorough medical history relevant to plaintiff's complaints, performed the correct physical assessment expected of a triage nurse and informed the E.R. physician of her findings"; and "the staff carried out all orders for laboratory and radiologic studies in a timely fashion, and complied with Dr. MOUSTAFA's orders regarding splinting, medication and discharge."

In opposition to the motion, Plaintiff principally argued that Glendale Hospital failed to satisfy its burden as the moving party, because it did not address its liability for Dr. Moustafa's negligence in his capacity as the hospital's ostensible agent. Plaintiff emphasized that it was undisputed she sought treatment at Glendale Hospital, and this fact alone created a triable issue as to whether Dr. Moustafa was the hospital's ostensible agent. Additionally, Plaintiff offered the declaration of Dr. Bernard T. McNamara, an ER physician board certified in Emergency Medicine, who opined that "Dr. Moustafa's evaluation and actions . . . fell below the standard of care." Specifically, Dr. McNamara noted that Dr. Moustafa "failed to seriously consider the possibility of a vascular injury," adding that he "should have had a high index of suspicion for arterial compromise with this type of fracture, even if the pulses were normal, and should have ordered an arterial Doppler to further evaluate [Plaintiff's] circulation." Dr. McNamara concluded that Dr. Moustafa's failure to recognize the vascular injury contributed to the delay in surgical intervention and the resulting loss of Plaintiff's leg.

Glendale Hospital addressed the ostensible agency issue for the first time in its reply brief. The hospital argued evidence submitted with its moving papers showed "[Plaintiff] was given actual notice of the true relationship between the hospital and the doctors who treated her." (Boldface and underlining omitted.) Specifically, the hospital

4

cited a document entitled "CONDITIONS OF ADMISSION AND TREATMENT" (the Admission Form), which provides the following explanation at paragraph five:

> "**5.      Doctors are Independent Medical Care Providers**
>
> **Doctors caring for patients in the Hospital are independent providers of medical care and are <u>not</u> employees or agents of the Hospital.  These doctors include clinic physicians, surgeons, emergency room doctors, hospitalists, radiologists, pathologists, anesthesiologists and intensive care doctors.  The doctors are also responsible for giving you information about the risks, benefits, and alternative kinds of treatment so that you can make an informed decision about the Patient's care.  The Hospital's nurses and staff are responsible for carrying out the instructions of the doctor(s).  <u>You will receive a separate bill from the doctors for their services.</u>**"

In its reply brief, Glendale Hospital claimed "[Plaintiff's] signature is found on page 3 of 3 of the very same document," though it offered no evidence to prove this assertion.  The hospital nevertheless argued the Admission Form conclusively negated Plaintiff's claim that Dr. Moustafa was its ostensible agent when he treated her in the hospital's ER.

The trial court granted the summary judgment motion.  Though it acknowledged Glendale Hospital had addressed the ostensible agency issue for the first time in its reply brief, the court nevertheless stated it would consider the hospital's argument because Plaintiff had "clearly anticipated" the issue in her opposition.  Citing the explanation provided in paragraph five of the Admission Form, and Plaintiff's purported signature on the form's third page, the court found "it is clear that Plaintiff knew or should have known that the physicians caring for her at [Glendale Hospital] were not agents of the hospital."  Because Plaintiff's expert evidence created a triable issue as to Dr. Moustafa's negligence only, the court concluded that Plaintiff had not shown Glendale Hospital's employees failed to act within the standard of care.

## DISCUSSION

1.      *Standard of Review*

"On appeal after a motion for summary judgment has been granted, we review the record de novo, considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334.) We make "an independent assessment of the correctness of the trial court's ruling, applying the same legal standard as the trial court in determining whether there are any genuine issues of material fact or whether the moving party is entitled to judgment as a matter of law." (*Iverson v. Muroc Unified School Dist.* (1995) 32 Cal.App.4th 218, 222.)

"The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar, supra,* 25 Cal.4th at p. 843.) In conducting this analysis, "declarations of the moving party are strictly construed, those of the opposing party are liberally construed, and doubts as to whether a summary judgment should be granted must be resolved in favor of the opposing party." (*Proulx, supra,* 98 Cal.App.4th at p. 195.)

A defendant may move for summary judgment "if it is contended that the action has no merit . . . ." (Code Civ. Proc., § 437c, subd. (a).) A defendant meets its burden by showing that "one or more elements of the cause of action, even if not separately pleaded, cannot be established, or that there is a complete defense to that cause of action. Once the defendant . . . has met that burden, the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto." (*Id.*, subd. (p)(2).) "The motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (*Id.*, subd. (c).)

In performing our de novo review, we apply " 'the same three-step process required of the trial court: First, we identify the issues raised by the pleadings, since it is these allegations to which the motion must respond; secondly, we determine whether the

6

moving party's showing has established facts which negate the opponent's claims and justify a judgment in movant's favor; when a summary judgment motion prima facie justifies a judgment, the third and final step is to determine whether the opposition demonstrates the existence of a triable, material factual issue.' " (*Waschek v. Department of Motor Vehicles* (1997) 59 Cal.App.4th 640, 644 (*Waschek*).)

> 2.      *Glendale Hospital Failed to Make a Prima Facie Showing that Dr. Moustafa Was Not Acting as Its Ostensible Agent when He Treated Plaintiff*

Plaintiff contends Glendale Hospital did not meet its initial burden as the moving party because it failed to address its potential liability under an ostensible agency theory for Dr. Moustafa's alleged negligence. In her complaint, plaintiff alleged that at all times "each defendant was the agent of each other defendant, and was acting within the course and scope of said agency." Plaintiff also invokes the principle, now well established in case law, that physicians are readily inferred to be the ostensible agents of the hospital where they administer care, unless the patient had reason to know of the true relationship between the physician and hospital. (See *Mejia v. Community Hospital of San Bernardino* (2002) 99 Cal.App.4th 1448, 1454 (*Mejia*).)[2] Thus, to meet its initial burden as the party moving for summary judgment, Glendale Hospital was required to establish

---

[2]      *Mejia*, which we principally rely upon in this opinion, drew this principle from *Stanhope v. L. A. Coll. of Chiropractic* (1942) 54 Cal.App.2d 141 (*Stanhope*)—the first California case to apply ostensible agency to a claim against a hospital based on the alleged malpractice of a nonemployee physician. (*Mejia, supra,* 99 Cal.App.4th at p. 1457.) As the *Mejia* court noted, *Stanhope* "served as a springboard for [a] national trend" in which "the majority of the courts throughout the nation . . . [have] inferred ostensible agency from the mere fact that the plaintiff sought treatment at the hospital without being informed that the doctors were independent contractors." (*Mejia,* at p. 1457.) Our Supreme Court also adopted *Stanhope* in two other hospital liability cases involving negligent anesthesiologists. (See *Quintal v. Laurel Grove Hospital* (1964) 62 Cal.2d 154, 167-168; *Seneris v. Haas* (1955) 45 Cal.2d 811, 831-832.)

We note that Plaintiff has cited to an unpublished California Court of Appeal opinion in her opening brief. We admonish Plaintiff to adhere to the mandate of California Rules of Court, rule 8.1115 and refrain from citing such opinions in the future. (See *Alicia T. v. County of Los Angeles* (1990) 222 Cal.App.3d 869, 884-885.)

7

undisputed facts which negated the inference of ostensible agency and justified a judgment in its favor. (*Waschek, supra,* 59 Cal.App.4th at p. 644.) Glendale Hospital failed to meet this burden.

a. *Doctors are readily inferred to be the ostensible agents of the hospital where they administer care*

"A hospital is liable for a physician's malpractice when the physician is actually employed by or is the ostensible agent of the hospital." (*Jacoves v. United Merchandising Corp.* (1992) 9 Cal.App.4th 88, 103 (*Jacoves*).) Though Glendale Hospital's motion and separate statement did not address whether the hospital actually employed Dr. Moustafa, Plaintiff has nevertheless limited her appeal to the issue of whether the doctor was Glendale Hospital's ostensible agent. We therefore focus on the ostensible agency issue as well.

"An ostensible agency is established when a principal intentionally, or by want of ordinary care, causes a third person to believe another is an agent. (Civ. Code, §§ 2300, 2317.) A principal is liable for the acts of an ostensible agent when third parties have justifiably relied on representations made by the principal. (Civ. Code, § 2334.) A principal is also liable when the principal knows the agent holds himself or herself out as clothed with certain authority and remains silent." (*Jacoves, supra,* 9 Cal.App.4th at p. 103.)

The court in *Mejia* thoroughly examined the applicability of California's ostensible agency statutes to a malpractice claim against a hospital based on an independent contractor physician's conduct. The plaintiff in *Mejia* went to a local hospital's emergency room experiencing neck pain. (*Mejia, supra,* 99 Cal.App.4th at p. 1450.) The on-call radiologist failed to diagnose that she had a broken neck and, based in part on the radiologist's report, the ER physician discharged the plaintiff "telling her that she had a twisted neck, but was otherwise all right." (*Id.* at p. 1451.) The next morning she awoke paralyzed. (*Ibid.*) The plaintiff sued the hospital, as well as the ER physician and radiologist, both of whom were employed by companies that independently contracted with the hospital to run the ER and radiology department. (*Ibid.*) At the close

8

of the plaintiff's case, the trial court granted the hospital's motion for nonsuit. (*Ibid.*) The case proceeded against the remaining defendants, and the jury ultimately returned a verdict against the radiologist for negligence. (*Ibid.*) The plaintiff appealed the nonsuit order, contending there was a triable issue as to whether the negligent radiologist was the hospital's ostensible agent. (*Ibid.*) The Court of Appeal agreed and reversed. (*Id.* at pp. 1451, 1461.)

The *Mejia* court began by examining a national trend to depart from rigid application of the "control" test for hospital vicarious liability, while embracing a realistic application of ostensible agency principles "in the context of the modern health care system." (*Mejia, supra,* 99 Cal.App.4th at p. 1453.) Quoting from an "often cited passage" by a New York court appraising the modern relationship between hospitals and their patients, the *Mejia* court explained: " 'The conception that the hospital does not undertake to treat the patient, does not undertake to act through its doctors and nurses, but undertakes instead simply to procure them to act upon their own responsibility, no longer reflects the fact. Present-day hospitals, as their manner of operation plainly demonstrates, do far more than furnish facilities for treatment. They regularly employ on a salary basis a large staff of physicians, nurses and internes [*sic*], as well as administrative and manual workers, and they charge patients for medical care and treatment, collecting for such services, if necessary, by legal action. Certainly, the person who avails himself of "hospital facilities" expects that the hospital will attempt to cure him, not that its nurses or other employees will act on their own responsibility.' " (*Ibid.*, quoting *Bing v. Thunig* (N.Y. 1957) 2 N.Y.2d 656, 666.) In view of this modern reality, the *Mejia* court observed that "the overwhelming majority of jurisdictions employ[ ] ostensible or apparent agency to impose liability on hospitals for the negligence of independent contractor physicians." (*Mejia,* at p. 1453, citing *Sword v. NKC Hospitals, Inc.* (Ind. 1999) 714 N.E.2d 142, 150 and *Clark v. Southview Hosp. & Family Health Ctr.* (Ohio 1994) 628 N.E.2d 46, 53 for comprehensive lists.)

9

With that context, the *Mejia* court turned its attention to California's governing statutes. (Civ. Code, §§ 2300, 2334). To establish ostensible agency liability against a hospital for the alleged malpractice of an independent physician, the court reasoned proof of two elements is necessary: "(1) conduct by the hospital that would cause a reasonable person to believe there was an agency relationship and (2) reliance on that apparent agency relationship by the plaintiff." (*Mejia, supra,* 99 Cal.App.4th at pp. 1456-1457.)

The first element, the *Mejia* court explained, is generally "satisfied when the hospital 'holds itself out' to the public as a provider of care. [Citations.] In order to prove this element, it is not necessary to show an express representation by the hospital. [Citations.] Instead, a hospital is generally *deemed* to have held itself out as the provider of care, unless it gave the patient contrary notice." (*Mejia, supra,* 99 Cal.App.4th at pp. 1453-1454, italics added.) Further, recognizing the extraordinary circumstances accompanying medical emergencies, the court added that "[m]any courts have even concluded that prior notice may not be sufficient to avoid liability in an emergency room context, where an injured patient in need of immediate medical care cannot be expected to understand or act upon that information." (*Id.* at p. 1454.)

As for the second element, the *Mejia* court stated that "reliance, is established when the plaintiff 'looks to' the hospital for services, rather than to an individual physician." (*Mejia, supra,* 99 Cal.App.4th at p. 1454.) The court clarified that "reliance need not be proven by direct testimony. [Citations.] In fact, many courts presume reliance, absent evidence that the plaintiff knew or should have known the physician was not an agent of the hospital." (*Ibid.*)

Given the presumption of reliance, the *Mejia* court reasoned that "there is really only one relevant factual issue: whether the patient had reason to know that the physician was not an agent of the hospital." (*Mejia, supra,* 99 Cal.App.4th at p. 1454.) The court explained, "As noted above, hospitals are generally deemed to have held themselves out as the provider of services unless they gave the patient contrary notice, and the patient is generally presumed to have looked to the hospital for care unless he or she was treated by his or her personal physician. Thus, unless the patient had some reason to know of the

10

true relationship between the hospital and the physician—i.e., because the hospital gave the patient actual notice or because the patient was treated by his or her personal physician—ostensible agency is readily inferred." (*Id.* at pp. 1454-1455.)

Applying the foregoing analysis to the standard for obtaining nonsuit, the *Mejia* court observed it would be "difficult, if not impossible, for a hospital to ever obtain a nonsuit based on the lack of ostensible agency," because "[e]ffectively, all a patient needs to show is that he or she sought treatment at the hospital . . . ." (*Mejia, supra,* 99 Cal.App.4th at p. 1458.) Thus, the court held, "[u]nless the evidence conclusively indicates that the patient should have known that the treating physician was not the hospital's agent, such as when the patient is treated by his or her personal physician, the issue of ostensible agency must be left to the trier of fact." (Id. at p. 1458.)

With these principles in mind, we turn to whether Glendale Hospital negated the inference of ostensible agency in its motion for summary judgment.

　　　　b.　　*Glendale Hospital failed to negate the ostensible agency inference*

Though it included numerous facts detailing the examination and treatment administered by Dr. Moustafa, nothing in Glendale Hospital's separate statement or memorandum addressed its legal relationship with the doctor, or whether Plaintiff knew or should have known of that relationship before she received treatment in the hospital's ER. In view of this omission, and the ostensible agency inference articulated in *Mejia*, Plaintiff contends Glendale Hospital failed to meet its initial burden as the party moving for summary judgment. We agree.

It is undisputed that Plaintiff "sought treatment" for her leg injury at Glendale Hospital and that Dr. Moustafa administered such treatment in the hospital's ER. (*Mejia, supra,* 99 Cal.App.4th at p. 1458.) The trier of fact could therefore "readily infer[ ]" that Dr. Moustafa was Glendale Hospital's ostensible agent when he failed to diagnose the vascular injury that resulted in Plaintiff losing her leg. (*Id.* at p. 1455.) Thus, as part of its initial burden in moving for summary judgment, Glendale Hospital was required to negate the ostensible agency inference by establishing that Plaintiff knew or should have known Dr. Moustafa was not the hospital's agent when he rendered the allegedly

11

negligent treatment. (*Id.* at p. 1458.) Having failed to address the issue in its motion and separate statement, Glendale Hospital clearly did not meet its burden.[3]

Glendale Hospital contends this deficiency does not warrant reversal. Though it failed to address ostensible agency in its moving papers, the hospital argues there was "no unfairness" because "it was [Plaintiff] who recognized and raised and addressed the issue in her opposition." It adds that "[n]o new evidence was brought in," since the Admission Form it ultimately relied upon could be found in its moving papers as part of Plaintiff's medical file. That form, the hospital emphasizes, includes the following explanation: "Doctors caring for patients in the Hospital are independent providers of medical care and are <u>not</u> employees or agents of the Hospital. These doctors include clinic physicians, surgeons, emergency room doctors, hospitalists, radiologists, pathologists, anesthesiologists and intensive care doctors." (Boldface omitted.) Glendale Hospital contends this evidence indisputably establishes Plaintiff knew or should have known Dr. Moustafa was not its agent and, thus, conclusively negates the ostensible agency inference. Because its reply brief "simply pointed out, from evidence already in the record, why [P]laintiff's theory of ostensible agency could not hold," the hospital argues the trial court properly relied upon the Admission Form in granting its motion for summary judgment. We disagree.

In moving for summary judgment, Glendale Hospital failed to state any facts in its motion or separate statement to support its contention that Plaintiff knew or should have known Dr. Moustafa was not its employee or agent. The moving papers make no mention of the Admission Form or any other notice that Plaintiff might have received concerning the hospital's purported legal relationship with Dr. Moustafa. In view of

---

[3]     To be clear, Glendale Hospital does not contend that its expert evidence conclusively established Dr. Moustafa acted within the standard of care, nor does it dispute that Plaintiff's expert evidence raised a triable issue as to Dr. Moustafa's negligence. Thus, if the trier of fact could find Dr. Moustafa was the hospital's ostensible agent, Glendale Hospital would not be entitled to summary judgment. (See *Jacoves, supra,* 9 Cal.App.4th at p. 103.)

12

Glendale Hospital's burden, and the due process considerations underpinning the procedural requirements for summary judgment, this omission is fatal.[4]

Plaintiff raised the ostensible agency inference in her opposition brief to demonstrate why the facts set forth in Glendale Hospital's moving papers were insufficient to shift the burden. Contrary to the hospital's contention, the fact that Plaintiff raised the issue did not relieve Glendale Hospital of its duty to notify Plaintiff of all material facts it would rely upon to negate the ostensible agency inference. Indeed, had the hospital stated in its moving papers (as it asserted in its reply brief) that it gave Plaintiff notice of its legal relationship with Dr. Moustafa through the Admission Form, Plaintiff would have had the opportunity to marshal contrary evidence to dispute this proffered material fact. (See, e.g., *Whitlow v. Rideout Memorial Hospital* (June 9, 2015, C074810) ___ Cal.App.4th ___ [2015 Cal.App. Lexis 496].)

Even setting aside the procedural deficiency, there is another problem with the Admission Form that Glendale Hospital overlooks. Before it could rely upon the Admission Form to show Plaintiff knew or should have known Dr. Moustafa was not its agent or employee, the hospital first was required to prove Plaintiff actually read or at least signed the form when she was admitted to the ER. The declaration by Glendale Hospital's Risk Manager, who does not claim to have personal knowledge of Plaintiff's admission to the ER or the appearance of her signature, purports to prove neither. At most, the Risk Manger's declaration establishes that the form was included among the documents identified as "[t]he medical chart of Plaintiff MARIA P. REYES." Viewing

---

[4]     Insofar as Glendale Hospital relies upon cases holding the "trial court may grant summary judgment on a ground not specifically tendered by the moving party, so long as the opposing party has notice of and an opportunity to respond to that ground" (*Bacon v. Southern Cal. Edison Co*. (1997) 53 Cal.App.4th 854, 860, citing *Juge v. County of Sacramento* (1993) 12 Cal.App.4th 59, 70), we conclude these cases are inapposite. Application of that doctrine requires the opposing party to have received *notice* of the unstated ground in a manner sufficient to afford it an opportunity to respond. Here, because Glendale Hospital failed to include the supposed fact in its moving papers, Plaintiff had no notice that she should respond to the charge that she knew or should have known of the hospital's purported legal relationship with Dr. Moustafa.

the evidence in the light most favorable to Plaintiff as the nonmoving party, we conclude the mere existence of this Admission Form in Plaintiff's medical records, in and of itself, was not sufficient to "conclusively indicate[] that [Plaintiff] should have known [Dr. Moustafa] was not the hospital's agent." (*Mejia, supra,* 99 Cal.App.4th at p. 1458.) Glendale Hospital failed to negate the ostensible agency inference; accordingly, "the issue of ostensible agency must be left to the trier of fact." (*Ibid.*)

## DISPOSITION

The summary judgment is reversed. Plaintiff is entitled to her costs.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


KITCHING, J.

We concur:


EDMON, P. J.


EGERTON, J. *

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.