Filed 6/24/22  Sanchez v. Alston Construction Co. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| MARIA DEL CARMEN REYES SANCHEZ, Individually and as Personal Representative, etc., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> ALSTON CONSTRUCTION COMPANY, INC., <br><br> Defendant and Respondent. | B309232 <br><br> (Los Angeles County Super. Ct. No. BC670915) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Olivia Rosales, Judge.  Affirmed.

Greenberg & Ruby, David H. Greenberg, Emily A. Ruby; Gusdorff Law, Janet Gusdorff; The Farias Firm and James G. Farias for Plaintiff and Appellant.

Friedenthal, Heffernan & Brown, Daniel Friedenthal, Jay D. Brown, James Lee; Ropers, Majeski, Terry Anastassiou and Maureen C. O'Hara for Defendant and Respondent.

While working on a roof at a construction site, Leonel Carrasco Torres fell through a skylight and was severely injured.  His employer, KML Services, Inc. (KML) was a subcontractor on the job.  Torres and his wife Maria Del Carmen Reyes Sanchez filed a personal injury suit.  The named defendants included the general contractor, Alston Construction Company, Inc. (Alston).  The trial court granted Alston summary judgment based on the *Privette* doctrine (*Privette v. Superior Court* (1993) 5 Cal.4th 689), which holds a hirer of an independent contractor is typically not liable for contractor's negligence.  (*Id.* at pp. 691–692.)  Plaintiffs timely appealed.  We affirm.

**FACTS AND PROCEDURAL BACKGROUND**

Alston is a construction general contractor.  Alston acts solely in a managerial capacity and hires independent contractors to perform the actual construction work.

In 2015, Alston contracted with PanCal 11525 Shoemaker LLC (PanCal) to alter an existing building and construct a parking lot for FedEx Ground Package System, Inc. (FedEx Project).  Alston contracted with AMPCO Contracting, Inc. (AMPCO) to demolish existing structures and pavement.  In turn, AMPCO hired KML to remove asbestos from the structures before the demolition began.

The Alston/AMPCO agreement contained a set of rules related to worksite safety, among them Alston's "Site Specific Safety Plan."  The plan expressly delegated worksite safety, including "safety training and equipment" and "[f]all prevention and/or protection" to AMPCO and its lower-tiered subcontractors.  The plan also required subcontractors to "perform and document pre-task planning to identify any hazards related to their work."  AMPCO understood and agreed that it was responsible for ensuring that its lower-tiered contractors comply with the plan.  The AMPCO/KML agreement referenced and expressly incorporated the Alston/AMPCO agreement, including worksite safety obligations for lower-tiered contractors.  Alston could inspect all subcontractors' work and had the right to shut down the FedEx Project and/or have offending subcontractor employees removed if they were not complying with safety regulations.

Alston's project superintendent, Chuck Gonzalez, was responsible for general management of the worksite, including worksite safety. However, Gonzalez "was not responsible for supervising or monitoring the activities of the independent contractors or their employees."

Torres was one of the KML workers assisting in the removal of asbestos from an existing structure. On the morning of Torres's accident, project superintendent Gonzalez conducted a tailgate safety meeting before work began. Among the attendees were Torres and KML's foreman. Gonzalez discussed job safety, including fall protection. He also climbed a ladder to the roof line and "glanced" at the roof where the asbestos remediation was to occur. Gonzalez then asked the KML foreman to go up on the roof to locate tie-off points to anchor workers' safety harnesses. The foreman climbed the ladder and, after a minute, stated, " 'Everything is good to go.' " The safety meeting concluded, and KML employees began their work. Gonzalez went to another part of the worksite.

While sweeping debris off the roof, Torres stepped through a fiberglass skylight. The skylight broke and Torres fell to the cement slab below. He sustained catastrophic injuries. Torres received medical care and benefits from KML's workers' compensation insurance.

Torres and Sanchez (plaintiffs) filed a complaint against Alston and other defendants for negligence and loss of consortium.[1] Specifically, plaintiffs alleged Torres's fall resulted from defendants' failure "to properly maintain and [*sic*] the premises."

---

[1] Torres died during the pendency of this appeal and his wife Maria Del Carmen Reyes Sanchez was granted leave to substitute in as plaintiff on the negligence claim. (Code Civ. Proc., § 377.30; Cal. Rules of Court, rule 8.36(a).) For simplicity, for trial court proceedings we refer to both parties collectively as "plaintiffs" unless we need to designate Torres alone by name. Where appropriate in the "DISCUSSION" section, rather than use "plaintiffs" we refer solely to "Sanchez" as appearing both in an individual and a representative capacity in this appeal.

3

Alston moved for summary judgment. Alston argued that, as a general contractor, Alston was not liable for worksite injuries suffered by an independent contractor's employee. Alston reasoned it neither retained control over worksite safety conditions nor negligently exercised any alleged control that affirmatively contributed to Torres's injury.

In opposition, plaintiffs mainly argued that triable issues of fact existed whether Alston was responsible for worksite safety and for warning contract workers about the skylight, a concealed hazard. Plaintiffs added that certain aspects of the Alston/AMPCO and AMPCO/KML contracts meant that Alston solely retained responsibility for the FedEx Project. As a result, plaintiffs contended, worksite safety duties were never successfully delegated to the lower-tiered contractors. Plaintiffs also alleged Alston was liable for breaching California Occupational Health and Safety (Cal-OSHA) regulations.

The trial court granted summary judgment, finding that Torres's negligence claim against Alston was barred by the *Privette* doctrine. The ruling also disposed of his wife's loss of consortium claim. Following entry of judgment, plaintiffs appealed.

## DISCUSSION

On appeal, Sanchez contends there are triable issues of fact: (1) whether Alston presumptively delegated its worksite safety duties to the lower-tiered contractors or, if Alston did, (2) whether the "retained control" and "concealed hazard" exceptions to the *Privette* doctrine applied, making Alston liable for Torres's injury. Sanchez also maintains the *Privette* doctrine should be abolished as unconstitutional.

## I.    The *Privette* Doctrine

"Workers' compensation ' "is the exclusive remedy against an employer for injury or death of an employee." [Citation.]' (*Privette, supra,* 5 Cal.4th at p. 697.) In *Privette*, the Supreme Court held that 'an independent contractor's employee should not be allowed to recover damages from the contractor's hirer, who "is indirectly paying for the cost of [workers' compensation] coverage, which the [hired] contractor

4

presumably has calculated into the contract price." ' " (*Alvarez v. Seaside Transportation Services* LLC (2017) 13 Cal.App.5th 635, 640.) Thus, the so-called *Privette* doctrine bars an employee of an independent contractor from recovering damages from the hirer of the contractor for a worksite injury. (*SeaBright Ins. Co. v. US Airways, Inc.* (2011) 52 Cal.4th 590, 594.) In other words, a subcontractor's employee injured on the job is generally entitled to no greater damages than a similarly injured employee of a general contractor. Both employees are limited to receiving workers' compensation benefits.

Apart from the workers' compensation-based rationale undergirding the *Privette* doctrine, the Supreme Court has recently placed greater emphasis on the rationale that a "presumptive delegation of tort duties occurs when the hirer turns over control of the worksite to the contractor so that the contractor can perform the contracted work." (*Sandoval v. Qualcomm Incorporated* (2021) 12 Cal.5th 256, 271 (*Sandoval*).) "Over time, we've recast our primary rationale for the *Privette* doctrine in terms of delegation rather than workers' compensation." (*Id.* at p. 270; *Gonzalez v. Mathis* (2021) 12 Cal.5th 29, 41 ["Our more recent cases emphasize delegation as the key principle underlying this rule"].) As a result, "[t]here is a strong presumption under California law that a hirer of an independent contractor delegates to the contractor all responsibility for workplace safety." (*Gonzalez,* at p. 37.)

## II.    Exceptions to the *Privette* doctrine

Nonetheless, there are exceptions to the *Privette* doctrine. They apply in situations where the presumption of delegation is overcome: Under the "retained control" exception, "a hirer owes a duty to a contract worker if the hirer retains control over any part of the work and actually exercises that control so as to affirmatively contribute to the worker's injury." (*Sandoval, supra,* 12 Cal.5th at p. 271, citing *Hooker v. Department of Transportation* (2002) 27 Cal.4th 198, 202 (*Hooker*).) Under the "concealed hazard" exception, "a landowner-hirer owes a duty to a contract worker if the hirer fails to disclose to the

contractor a concealed premises hazard." (*Sandoval*, at p. 271, citing *Kinsman v. Unocal Corp.* (2005) 37 Cal.4th 659, 664 (*Kinsman*).)

### III. The *Privette* Presumption and Summary Judgment

" 'A defendant moving for summary judgment . . . may demonstrate that the plaintiff's cause of action has no merit by showing that (1) one or more elements of the cause of action cannot be established, or (2) there is a complete defense to that cause of action.' {Citation.] [¶] Generally, 'the party moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact.' " (*AMN Healthcare Inc. v. Aya Healthcare Services, Inc.* (2018) 28 Cal.App.5th 923, 933–934.) We review the trial court's grant of summary judgment de novo. (*Id.* at p. 934.)

In negligence cases, where an independent contractor's employee suffers a worksite injury, the hirer who invokes the *Privette* doctrine and moves for summary judgment must present a factual showing for the doctrine to apply. That factual showing is the hirer employed the independent contractor for work at the jobsite and the employee was injured while working at the site. (*Alvarez v. Seaside Transportation Services LLC, supra*, 13 Cal.App.5th at p. 644.) Once this factual showing is made, the presumption of delegation is triggered and the burden shifts to the plaintiff/employee. If the plaintiff does not raise triable issues of fact, the defendant/hirer is entitled to summary judgment. (*Alvarez*, at p. 646.)

The plaintiff can rebut the presumption of delegation by presenting evidence making a prima facie showing of a triable issue of fact in support of one or more exceptions. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850–851.)

### IV. Alston Made the Requisite Factual Showing for the *Privette* Presumption To Apply

Alston established it was entitled to the presumption of delegation. Alston presented evidence it hired AMPCO, who then hired Torres's employer KML for the FedEx Project. Torres was injured while working on the project. KML's workers' compensation insurance

6

covered Torres's injuries. "This evidence was sufficient to establish that the *Privette* presumption applied and, therefore, shifted the burden to plaintiff to raise a triable issue of fact." (*Alvarez v. Seaside Transportation Services LLC*, *supra*, 13 Cal.App.5th at p. 644.)

Sanchez, however, argues that deficiencies in the Alston/AMPCO and AMPCO/KML contracts rendered them unenforceable. As a consequence, according to Sanchez, Alston failed to delegate its worksite safety duties to the lower-tiered contractors; the presumption of delegation did not apply.

Sanchez first contends the Alston/AMPCO contract may not have been timely executed. It is undisputed that both parties signed the agreement, but the electronic signature line reveals AMPCO signed it on the date of Torres's accident. Sanchez maintains this means a triable issue exists whether the contract was signed after Torres fell, making the agreement unenforceable. However, Sanchez cannot speculate on potential untimeliness to create a triable issue of fact. (*Doe v. Salesian Society* (2008) 159 Cal.App.4th 474, 481 [opposing party cannot controvert moving party's evidence by mere speculation or possibility]; *Lyons v. Security Pacific Nat. Bank* (1995) 40 Cal.App.4th 1001, 1014 [same].) In any event, Sanchez failed to show the Alston/AMPCO agreement was not binding unless signed by both parties. (*Kaneko v. Okuda* (1961) 195 Cal.App.2d 217, 225 [absent "a showing that a contract is not to be deemed complete unless signed by all parties, the parties signing may be bound though others have not signed"].) Moreover, there is no evidence the parties treated the Alston/AMPCO contract as not being fully consummated between them.

Sanchez also contends the AMPCO/KML contract was unenforceable because it appeared contingent upon a condition precedent, a contract with another entity, that never occurred. A condition precedent may be impliedly waived by conduct. (See *Sosin v. Richardson* (1962) 210 Cal.App.2d 258, 264.) Here, the record leaves no question that when Torres was injured, KML was working as AMPCO's subcontractor on the FedEx Project in accordance with their agreement. Further, AMPCO acknowledged it had complete

responsibility to ensure KML and other subcontractors complied with Alston's safety rules while working on the project. Because the evidence established the presumptive delegation applied, the burden shifted to plaintiffs to raise a triable issue of fact.

## V. Summary Judgment was Proper

Sanchez argues that even if Alston met its initial burden as the moving party, they succeeded in raising triable issues of fact in support of the "retained control" and "concealed hazard" exceptions. Sanchez also argues Alston breached its nondelegable duties under Cal-OSHA.

### A. Plaintiffs Failed to Raise a Triable Issue of Fact to Support the Retained Control Exception

Under the retained control exception, a hirer is subject to liability if the hirer retained control over the independent contractor's work and exercised that retained control in a way that affirmatively contributed to the contract worker's injury. (*Sandoval*, *supra*, 12 Cal.5th at p. 271.)

"A hirer 'retains control' where it retains a sufficient degree of authority over the manner of performance of the work entrusted to the contractor." (*Sandoval*, *supra*, 12 Cal.5th at p. 275.) A "hirer 'actually exercise[s]' its retained control over the contracted work when it involves itself in the contracted work 'such that the contractor is not entirely free to do the work in the contractor's own manner.' " (*Id.* at p. 276.)

Sanchez seeks to recover under the retained control exception because Alston "retained and exercised control over worksite safety and the means and manner in which KML's employees perform their work." It appears Sanchez is relying on the PanCal/Alston contract and the incorporated Site Specific Plan, which provides that Alston would be "fully and solely responsible" for worksite safety. Alston's position as a worksite manager, however, does not support an inference that Alston "in fact involve[d] itself [in the contracted work], such as through direction, participation, or induced reliance." (*Sandoval, supra*, 12 Cal.5th at p. 276; *Tverberg v. Fillner Construction, Inc.* (2012) 202 Cal.App.4th 1439, 1446 ["a hirer is not liable to a contractor or a contractor's employee merely because it retains control over safety

8

conditions"].)  Nothing in the record indicates that Alston actually exercised any form of direct control over KML's work or that Alston restricted Torres and other KML workers from performing their work in their own manner.  With respect to the roof in particular, Sanchez offers no evidence that Alston had any discussions or issued any instructions to KML regarding skylights or roof safety, undertook responsibility to inspect the roof before KML began work, interfered with or prohibited any inspections of the roof before work began, advised KML employees on where or how to tie off their harnesses, or otherwise how to perform their work on the roof.  (See, e.g., *Madden v. Summit View, Inc.* (2008) 165 Cal.App.4th 1267, 1276-1277.)

Sanchez also contends Alston exercised retained control over KML's work based on the deposition testimony of Chuck Gonzalez, Alston's project superintendent.  According to Sanchez, Gonzalez "voluntarily undertook responsibility for inspecting the worksite and supervising KML's employees, but failed to identify any of the unsafe conditions or work practices."  This misstates the evidence.  Gonzalez's uncontroverted testimony was that he did not "inspect" or handle the KML equipment to ensure it was safe for KML workers.  That was KML's responsibility.  As for the worksite, Gonzalez testified he asked the KML foreman to go up on the roof to look for tie-off points for the workers' safety harnesses.  But Gonzalez did not direct the foreman concerning the location or installation of the tie-off points, which were also part of KML's responsibility.  Gonzalez further testified it was KML's responsibility to identify all safety hazards on the roof, including skylights.

Sanchez further asserts Alston affirmatively contributed to Torres's injury.  She points to what she perceives as Alston's failure to undertake certain safety precautions, contrary to the Site Specific Safety Plan.  Among them were Alston's lack of a pre-project hazard assessment of the roof and implementation of fall protection rules. Sanchez also makes much of Alton's rush to have the work begin before Gonzalez could distribute Alston's safety materials to KML employees.

9

To be sure, a hirer's acts or omissions apart from the independent contractors can be found to affirmatively contribute to a contract worker's injury. (*Sandoval, supra,* 12 Cal.5th at p. 277.) But Sanchez does not explain how these omissions by Alston affirmatively contributed to the worksite injury. To the extent Sanchez is asking us to infer that if Alston had not omitted these safety precautions, the skylight would have been discovered and Torres's injuries would not have occurred, we decline to do so. It is true that courts are to consider all evidence and inferences reasonably drawn from that evidence in ruling on a summary judgment motion. (*Aguilar v. Atlantic Richfield Co., supra,* 25 Cal.4th at p. 843.) At the same time, those inferences must be reasonably deducible from the evidence, rather than from mere speculation, as is the case here. (*Waschek v. Department of Motor Vehicles* (1997) 59 Cal.App.4th 640, 647.)

We conclude the evidence in the record cited by Sanchez and reasonable inferences from that evidence do not create a triable issue of fact regarding Alston's exercise of retained delegation and affirmative contribution, in part because some of the evidence cited by Sanchez does not say what Sanchez claims it says and because some of her arguments rest on speculation.

**B.    Plaintiffs Failed to Raise a Triable Issue of Fact to Support the Concealed Hazard Exception**

Under *Kinsman's* "concealed hazard" exception, the hirer is liable only if (1) it knew, or should have known, of a latent or concealed preexisting hazardous condition on its property; (2) the independent contractor did not know and could not reasonably have discovered the hazardous condition; and (3) the hirer failed to warn the contractor about the condition. (*Kinsman, supra,* 37 Cal.4th at p. 675.)

The trial court found the key issue was whether Alston knew or should have known of the hazardous condition. Even the most cursory review of the evidence in this case shows plaintiffs cannot satisfy this element. Nothing in the record suggests Alston knew or should have known about the skylights. In his deposition, FedEx Project manager Richard Babcock testified the skylights were never discussed during

10

pre-project worksite meetings.  He also stated the skylights were not visible from above or below, and because the structure was 50 years old, there were no drawings depicting the skylights.  Project superintendent Gonzalez testified he never saw the FedEx Project before the day of the accident, and he had no prior knowledge of the skylights on the roof.  Further, Gonzalez did go on top of the roof, but quickly looked at it from the top of the ladder.  He never saw the skylights.  And, as we have discussed above in connection with the *Hooker* exception, Alston never undertook the responsibility to inspect the roof for any hazards that could endanger KML employees.  That responsibility was exclusively KML's.

Sanchez counters the project site plans may have shown the skylights on the roof, and had Gonzalez been afforded adequate time for a pre-job inspection, he may have found the skylights.  Sanchez further claims the KML foreman's notes from the pre-accident meeting that day expressly warned workers not to step on the skylights.  However, because the plaintiffs' expert determined the admonition was not written by the foreman, Sanchez argues a triable issue of fact exists whether Alston added the admonition later as a "coverup."  Once again, Sanchez improperly relies on speculation, but also argument and theory in an attempt to defeat summary judgment.  (*Wiz Technology, Inc. v. Coopers & Lybrand* (2003) 106 Cal.App.4th 1, 10–11.)

We conclude Sanchez has failed to raise a triable issue of fact whether Alston knew or should have known of the skylights, a concealed hazardous condition.

## VI.    Cal-OSHA Does Not Impose Nondelegable Duties Upon Alston

Sanchez additionally contends the Cal-OSHA regulations set forth in California Code of Regulations, title 8, section 1511, subdivision (b) (pre-work worksite hazard survey), section 1644 (metal scaffold), and section 3212, subdivision (a)(1) (floor and roof opening guards) impose a nondelegable duty on Alston.

Generally, a plaintiff can rely on statutory or regulatory law to show that a defendant owes the plaintiff a duty of care. (*Elsner v.*

11

*Uveges* (2004) 34 Cal.4th 915, 927, fn. 8.) However, our Supreme Court has held that Cal-OSHA regulations do not impose nondelegable duties upon a hirer of an independent contractor. (*SeaBright Ins. Co. v. US Airways Inc., supra,* 52 Cal.4th at p. 594.) In *SeaBright*, an employee of an independent contractor hired by an airline to repair a luggage conveyor was injured when his arm was caught in the conveyor's moving parts. (*Id.* at p. 594.) Here, Sanchez attempts to distinguish *SeaBright* by arguing the Supreme Court intended that the hirer presumptively delegates its tort duties only with respect to the job that the contract worker was specifically hired to do. According to Sanchez, unlike the injured worker in *SeaBright*, Torres was not hired "to perform work on the skylights, or discuss the skylights with anyone prior to KML beginning work." We are not persuaded. The Supreme Court expressly stated the delegation "includes any tort law duty the hirer owes to the contractor's employees to comply with applicable statutory or regulatory safety requirements." (*SeaBright*, at p. 594.) Thus, there are no triable issues of fact whether nondelegable duties exist.

## VII.  Constitutionality of the *Privette* doctrine

Notwithstanding the two recent California Supreme Court opinions reaffirming the *Privette* doctrine, Sanchez contends it is unconstitutional. We are bound by our high court's decisions on this issue and conclude the doctrine is not unconstitutional. (*Auto Equity Sales*, *Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

12

**DISPOSITION**

The judgment is affirmed. Alston Construction Company, Inc. is to recover its costs on appeal.

NOT TO BE PUBLISHED.

LUI, P. J.

We concur:

ASHMANN-GERST, J.

HOFFSTADT, J.