Filed 10/30/25  P. v. Simmons CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOSEPH SIMMONS,<br><br>    Defendant and Appellant. | H052058<br>(Santa Clara County<br> Super. Ct. No. C2309736) |

Two San Jose police officers detained defendant Joseph Simmons when they observed his Ford Escape parked in the area of Selma Olinder Park at night.  During a search of the vehicle's sunglasses compartment for Simmons' identification, an officer found pills recognized to be Xanax and a substance recognized as crystal methamphetamine.  A later search of the remainder of the vehicle revealed items including more suspected crystal methamphetamine, marijuana, a firearm, and a loaded magazine.

Simmons moved to suppress all evidence found in his vehicle.  The trial court denied the motion, concluding that officers had reasonable suspicion to detain Simmons, Simmons consented to the initial search of the vehicle's sunglasses compartment, and the items found in the initial search provided probable cause for the later search of the entire vehicle.  Simmons then pleaded no contest to possession of a firearm by a felon and two drug offenses.

Simmons argues the trial court erred in denying his suppression motion. We conclude that the trial court did not err in its ruling, and thus we will affirm the judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Simmons moved to suppress all evidence found in searches of his vehicle, asserting that San Jose police officers violated the Fourth Amendment to the United States Constitution in the searches. The trial court conducted an evidentiary hearing on the motion to suppress. Officer Elias Vargas was the sole witness at the hearing.

Officer Vargas had a little more than two years of experience as a San Jose Police Department officer by the time of the hearing. He had been involved in "five to ten" cases involving possession of drugs for sale.

Officer Vargas testified that he and his partner were on patrol at night on July 21, 2023, in the area of Selma Olinder Park. He had "come across multiple stolen vehicles that have either been abandoned or have been occupied within that area" and he had "encountered drug users that go to Selma Olinder Park to either b[uy] drugs or consume drugs as well." Officer Vargas and his partner "would patrol that area almost every single night that we worked," and Officer Vargas had made "approximately between three to five arrests" in that area, with "two to three of those" being drug-related arrests. Officer Vargas testified that he had seen vehicles parked in that area on other occasions after the park closed for the day and that he would conduct stops of such vehicles a "majority" of the time "if we have time."

At 10:37 p.m. Officer Vargas and his partner saw a blue Ford Escape parked in "a cut-through that connects South 22nd Street and Woodborough Place that cuts behind some houses" and is "kind of like a trail." As Officer Vargas and his partner "drove the trail," Officer Vargas noticed the Ford Escape "parked halfway onto the dirt and halfway onto the cement portion of the trail and it was also illegally parked as well . . . ." Officer Vargas testified that he also suspected the vehicle could have been abandoned or stolen. Officer Vargas testified that the vehicle was parked outside a fence that bounded a grassy

2

area of the park, but that it was parked in an area he believed was part of a trail, and that the trail was part of the park.

Officer Vargas testified that he suspected the vehicle was parked in violation of Vehicle Code section 22500 because it was parked "horizontally" and "almost on top of that cinderblock," occupying multiple spaces. Officer Vargas testified that he also suspected the driver violated a San Jose Municipal Code provision by entering or remaining in a city park when the park was closed.

The trial court admitted and considered two defense exhibits showing the location of the vehicle in relation to the park. A photograph shows the vehicle parked alongside a fence and on dirt, near a tree and a sign. A short video clip of this area, taken at a different time, shows that the area depicted in the photograph was set back from a street, past a short concrete driveway and a concrete walkway.

Officers activated their lights and sirens, as well as a light for visibility. As officers emerged from their car, Simmons came out from the Ford Escape. Officers instructed Simmons to approach them and to set down a shaving razor he was carrying, and Simmons complied. Officers also conducted a patdown of Simmons, which revealed nothing of note.

Officer Vargas then asked if Simmons had any form of identification, and Simmons responded that his identification was in his vehicle. Officer Vargas testified that he did not want Simmons to go back into his vehicle because he did not know if Simmons might have any weapons in the vehicle. Thus, Officer Vargas testified: "I asked if it was okay if I could go grab his identification and [Simmons] said yeah. He said yes." Simmons told Officer Vargas that the identification was in the sunglasses compartment in the ceiling of the vehicle's interior.

When Officer Vargas opened the sunglasses compartment, he "saw a bunch of cards," so he "grabbed everything that was in the compartment, took it out." The items Officer Vargas removed from the compartment included not only Simmons'

3

identification but also a bag of what Officer Vargas suspected were Xanax pills. Officer Vargas also noticed a bag containing what he believed was crystal methamphetamine in the panel of the driver's door. He testified that he "didn't have to move or manipulate anything" to see the bag in the driver's door. Officer Vargas testified that this initial search for Simmons' identification lasted "less than a minute" and that his "whole goal was just to go inside the car and grab his ID . . . ."

Officer Vargas then returned to where Simmons was and asked Simmons "for consent to search his vehicle or if there was anything else inside his vehicle that we should be aware of." Simmons replied that there might be a "narcotics pipe" inside the vehicle. Officer Vargas testified that Simmons "became hesitant and did not want to give us consent" but when Officer Vargas told Simmons that officers would search the car based on probable cause, Simmons "kind of told us we could search his car."

Officers then searched the vehicle. In the center console, they found "a large quantity of suspected crystal methamphetamine along with multiple empty baggies," a firearm, a loaded magazine, a digital scale, and $40. They found "a large amount of marijuana" in the trunk, and another digital scale and cell phones elsewhere in the vehicle.

The trial court denied the motion to suppress. The trial court first found that officers had reasonable suspicion to detain Simmons. The trial court stated it was "not sure" if officers had reasonable suspicion that Simmons violated Vehicle Code section 22500, but officers reasonably suspected Simmons violated the San Jose Municipal Code by entering or remaining in a city park when the park was closed to the public. The trial court concluded that Simmons voluntarily consented to Officer Vargas searching the vehicle for Simmons' identification, and that the contraband found while searching for identification provided probable cause to search the rest of the vehicle.

Simmons pleaded no contest pursuant to a plea agreement to possession of a firearm by a felon (Pen. Code, § 29800, subd. (a)(1)); possession for sale of

4

methamphetamine (Health & Saf. Code, § 11378); and possession for sale of a synthetic stimulant (*id.*, § 11375.5, subd. (a)).  The trial court suspended imposition of the sentence and placed Simmons on probation for two years with various terms and conditions.

## II. DISCUSSION

Simmons argues that officers did not reasonably suspect he violated the Vehicle Code or the San Jose Municipal Code when they detained him, and that his consent for Officer Vargas to search the vehicle for his identification was not valid.  He thus asserts that evidence obtained from the vehicle must be suppressed.

### A.  *Legal Principles and Standard of Review*

"The Fourth Amendment to the United States Constitution prohibits 'unreasonable searches and seizures.'  In general, a law enforcement officer is required to obtain a warrant before conducting a search.  [Citation.]  Warrantless searches 'are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.'  [Citations.]" (*People v. Lopez* (2019) 8 Cal.5th 353, 359 (*Lopez*).)

"A traffic stop is a seizure subject to the protections of the Fourth Amendment of the United States Constitution.  [Citation.]  We evaluate the legality of the traffic stop under the rubric of federal constitutional law [citation], which requires 'only reasonable suspicion in the context of investigative traffic stops.'  [Citation.]  'Reasonable suspicion a law has been violated can be based on less than probable cause to believe a violation has occurred but it cannot be based on mere speculation or hunch.'  [Citations.]  Reasonable suspicion ' " 'requires specific, articulable facts which, together with objective and reasonable inferences, form a basis for suspecting that a particular person is engaged in criminal conduct.' " '  [Citations.]  'An officer is entitled to rely on his training and experience in drawing inferences from the facts he observes, but those inferences must also "be grounded in objective facts and be capable of rational explanation." '  [Citation.]  Accordingly, a lawful traffic stop occurs when the facts and

5

circumstances known to the police officer support at least a reasonable suspicion that the driver has violated the Vehicle Code or another law. [Citations.]" (*People v. Nice* (2016) 247 Cal.App.4th 928, 937-938.)

"The guiding principle in determining the propriety of an investigatory detention is 'the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security.' [Citations.] In making our determination, we examine 'the totality of the circumstances' in each case. [Citations.]" (*People v. Wells* (2006) 38 Cal.4th 1078, 1083.)

One exception to the warrant requirement is a search conducted pursuant to consent. "The Fourth Amendment test for a valid consent to search is that the consent be voluntary, and "voluntariness is a question of fact to be determined from all the circumstances,' [citation]." (*Ohio v. Robinette* (1996) 519 U.S. 33, 40.) "If the validity of a consent is challenged, the prosecution must prove it was freely and voluntarily given—i.e., 'that it was [not] coerced by threats or force, or granted only in submission to a claim of lawful authority.' [Citations.]" (*People v. Boyer* (2006) 38 Cal.4th 412, 445-446.) "If consent is induced by an illegal arrest or detention, the illegality vitiates the consent and may require suppression of seized evidence unless attenuating circumstances dissipate the taint. [Citation.]" (*People v. Lujano* (2014) 229 Cal.App.4th 175, 188.)

If a traffic stop is lawfully carried out, the automobile exception to the warrant requirement may apply. "The automobile exception provides 'police who have probable cause to believe a lawfully stopped vehicle contains evidence of criminal activity or contraband may conduct a warrantless search of any area of the vehicle in which the evidence might be found.' [Citations.]" (*People v. McGee* (2020) 53 Cal.App.5th 796, 801.) "Once an officer has probable cause to search the vehicle under the automobile exception, they 'may conduct a probing search of compartments and containers within the vehicle whose contents are not in plain view.' [Citation.] Probable cause to search exists 'where the known facts and circumstances are sufficient to warrant a man of

6

reasonable prudence in the belief that contraband or evidence of a crime will be found.' [Citation.]" (*Ibid.*)

"A warrantless search is presumed to be unreasonable, and the prosecution bears the burden of demonstrating a legal justification for the search. [Citation.] 'The standard of appellate review of a trial court's ruling on a motion to suppress is well established. We defer to the trial court's factual findings, express or implied, where supported by substantial evidence. In determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment. [Citation.]' [Citations.]" (*People v. Redd* (2010) 48 Cal.4th 691, 719 (*Redd*).)

### B. *Analysis*

We conclude that officers had reasonable suspicion to detain Simmons. Following the lawful stop, Simmons' consent to look for his identification justified the initial search of the vehicle. The contraband found in that initial search provided probable cause to search the remainder of the vehicle. Thus, the trial court did not err in denying Simmons' motion to suppress.

### 1. *Officers reasonably suspected Simmons of violating a municipal code provision.*

Officer Vargas testified that they found Simmons' vehicle at 10:37 p.m. Simmons does not dispute that the park was closed by that point. Simmons was prohibited by municipal ordinance from "enter[ing] or remain[ing] in" the park after it was closed to the public.[1] (San Jose Mun. Code, § 13.44.240(A)(1).)

The trial court concluded that "Mr. Simmons's presence in the park's parking lot is contemplated by the municipal code section prohibiting presence after closing and therefore would supply the officers with reasonable suspicion to initiate a stop." The trial

---

[1] On our own motion, this court takes judicial notice of the municipal code provision. (See *Haggis v. City of Los Angeles* (2000) 22 Cal.4th 490, 501, fn. 3; *The Kennedy Com. v. City of Huntington Beach* (2017) 16 Cal.App.5th 841, 852.)

7

court's conclusion that Simmons' vehicle was within a city park and therefore covered by the municipal code provision constitutes a factual finding, and we defer to this factual finding if supported by substantial evidence. (*Redd*, *supra*, 48 Cal.4th at p. 719.)

Substantial evidence supports the court's factual finding that Simmons was on park property after the park was closed. Officer Vargas testified both on direct and cross-examination that Simmons' vehicle was parked on what he believed was park property with the vehicle at least partially resting on a park trail. He had experience with Selma Olinder Park, and had encountered stolen vehicles and drug activity in the area. He patrolled the area most nights he worked, and had previously conducted investigatory stops on cars parked in that area. On cross-examination, defense counsel asked Officer Vargas about the park's perimeter. Officer Vargas testified that while Simmons was parked outside a fence, he was parked on a trail that connects Woodborough Place and South 22nd Street and that this trail is considered park property according to a city Web site he had reviewed. When shown the brief video clip of the area in question, Officer Vargas reiterated his belief that the vehicle was parked on the trail.

Defense counsel then asked Officer Vargas: "Where he was located is a parking spot, not the trail. Correct?" Officer Vargas responded: "Sure, I guess you could say that," before noting his belief that Simmons was parked incorrectly. On redirect, Officer Vargas again testified that the trail on which he believed Simmons was parked constitutes part of Selma Olinder Park, and that Simmons was prohibited from being on the trail after the park closed.

The two defense exhibits from the motion hearing do not contradict Officer Vargas's testimony or the trial court's finding that the vehicle was on park property. The photograph shows the Ford Escape parked in a dirt area. This conflicts with Officer Vargas's testimony that the vehicle was partially parked on a concrete trail, but this discrepancy does not benefit Simmons. The video shows that the area in which Simmons was parked was well off the road, past a concrete driveway and inside the concrete trail

8

or walkway that runs along the park fence by which the vehicle was parked. Officer Vargas testified that the trail is considered part of the park, and the exhibits show Simmons was parked inside the trail. Officer Vargas's testimony provided evidence that supported the trial court's factual finding that Simmons was located on park property after hours in violation of the city municipal code.

Simmons asks this court to take judicial notice of two maps from the City of San Jose's Web site. The Attorney General did not respond to this request. We deny the request for judicial notice, as Simmons does not demonstrate that the maps are a proper subject for judicial notice. The maps were not submitted to the trial court, and "[r]eviewing courts generally do not take judicial notice of evidence not presented to the trial court." (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3.) Simmons asserts that these maps are noticeable under Evidence Code section 452, subdivisions (c) and (h). Subdivision (c) does not apply, as the maps are not "[o]fficial acts of the legislative, executive, and judicial departments of" the state. Subdivision (h) states that judicial notice may be taken of "[f]acts and propositions that are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy." The maps do not fall within this provision. The geography and boundaries of Selma Olinder Park are reasonably subject to dispute; indeed, these matters are central to the parties' disagreement on appeal. And the maps are not "sources of reasonably indisputable accuracy" merely because they appear on a city Web site. (See *Jolley v. Chase Home Finance, LLC* (2013) 213 Cal.App.4th 872, 889 ["we know of no 'official Web site' provision for judicial notice in California"]; *Huitt v. Southern California Gas Co.* (2010) 188 Cal.App.4th 1586, 1605, fn. 10 [denying request for judicial notice of information contained on

9

various Web sites not introduced at trial, stating: "Simply because information is on the Internet does not mean that it is not reasonably subject to dispute"].)

Even if we granted the judicial notice request, however, the maps do not assist Simmons. Simmons argues that the maps show "a small portion of unmarked road extending from the dead end of Woodborough Place to the border of the Five Wounds Trail." (Fn. omitted.) Simmons is correct: the maps depict a small, unmarked road (what appears on the video to be a driveway) connecting the street to the park. However, the maps do not demonstrate that this driveway is outside park property. In addition, Simmons' vehicle was not parked on the driveway, but past the driveway and the concrete trail or walkway, on a dirt area directly next to a fence and a tree. The maps depict the area inside the concrete trail or walkway as park property. Thus, the maps do not demonstrate that the trial court's factual finding was not supported by substantial evidence.

Simmons argues that officers were mistaken that the vehicle was on park property in violation of the ordinance. He does not demonstrate how the officers erred. However, even if officers were mistaken about the precise boundaries of the park, this error was a mistake of fact, not one of law, and officers reasonably suspected Simmons of a municipal code violation despite any such factual mistake.

Had the officers been mistaken about the municipal code itself—for example, had they believed the code prohibited entering a park between certain hours when the code did not prohibit such conduct—this mistaken belief might render their suspicion unreasonable. (See *People v. Reyes* (2011) 196 Cal.App.4th 856, 862 [officer's mistaken belief that single out-of-state license plate on vehicle violated California law resulted in lack of reasonable suspicion because "a pure mistake of law cannot provide objectively reasonable suspicion to support a traffic stop"]; *People v. White* (2003) 107 Cal.App.4th 636, 643-644 [officer's mistaken belief that car with only one Arizona license plate affixed violated Vehicle Code did not supply reasonable suspicion because "we do not

10

believe a suspicion founded on a mistake of law can constitute the reasonable basis required for a lawful traffic stop"].)

However, "a mere mistake of fact will not render a stop illegal, if the objective facts known to the officer gave rise to a reasonable suspicion that criminal activity was afoot. [Citation.]" (*United States v. Mariscal* (9th Cir. 2002) 285 F.3d 1127, 1131.) "[A]n officer's correct understanding of the law, together with a good-faith error regarding the facts, can establish reasonable suspicion. [Citation.]" (*United States v. King* (9th Cir. 2001) 244 F.3d 736, 739 (*King*).)

Even assuming Simmons' vehicle was outside the precise boundaries of the park, based on their experience with the park and its boundaries, the officers had a reasonable suspicion that Simmons violated the municipal code provision. The officers did not rely on mere speculation or hunch. Officer Vargas testified that he had confirmed this location was contained within the park's boundaries from the city's Web site. Nothing in the record contradicts this conclusion. Officers stopped Simmons based on a correct understanding of the municipal code, i.e., that it is unlawful to occupy the park after certain hours. Here, the underlying municipal code provision prohibiting after-hours occupancy of park property provided the legal justification for the stop, and the officers' error, if any, was one of fact, i.e., the correct location of the park boundary. The record evidence supports the conclusion that if the officers erred, it was "a good-faith error regarding the facts" that established "reasonable suspicion" they were witnessing criminal activity. (*King, supra*, 244 F.3d at p. 739.) The officers reasonably suspected Simmons violated a municipal code provision, and they were permitted to detain Simmons on this basis.[2]

---

[2] Simmons also argues that he did not violate Vehicle Code section 22500 because that section only prohibits parking in certain areas, none of which are implicated here. While the trial court stated that "arguably" Simmons violated subdivision (a) of this section, its ruling was based on the suspected municipal code violation. Thus, we do not

11

## 2. *The ensuing searches of Simmons' vehicle were lawful.*

Following the lawful traffic stop, Simmons' consent permitted officers to search the vehicle for his identification. Simmons argues that his consent to search the vehicle for his identification was "vitiated" by the alleged illegal detention. Because officers' decision to detain Simmons was supported by reasonable suspicion, Simmons' argument necessarily fails.

Simmons also argues that his consent to search the vehicle for his identification was invalid even if the stop was lawful because "a reasonable person would not have felt free to refuse the officers' request under the totality of the circumstances." But the record demonstrates that Simmons' initial consent to search the vehicle for his identification was voluntary. Nothing about Officer Vargas's testimony indicated the stop was particularly coercive. Simmons was able to leave his vehicle and approach officers. Officer Vargas testified that "I asked if it was okay if I could go grab his identification," and Simmons replied affirmatively with no equivocation. Simmons told Officer Vargas where to find the identification, further evincing his voluntary consent to this limited search.

Simmons cites *People v. Shelton* (1964) 60 Cal.2d 740 to assert that his initial consent to search the vehicle's interior for his identification was coerced. However, *Shelton* does not support his argument. In *Shelton*, the California Supreme Court concluded that the defendant's consent to search an apartment was not voluntary because he was under arrest when he gave his consent and because he later refused to assist the officers in gaining access to the apartment. (*Id.* at p. 745.) Here, Simmons was not under arrest when he gave consent to retrieve his identification and he did not subsequently refuse to cooperate.[3]

address the Attorney General's argument that this Vehicle Code provision provided reasonable suspicion to detain Simmons.

[3] Because we conclude that Simmons voluntarily consented to the search of the vehicle for his identification, we need not address the Attorney General's alternative argument that Officer Vargas had an independent right to enter the vehicle to retrieve Simmons' identification. However, as Simmons' reply brief observes, the California

The discovery of pills suspected to be Xanax in the sunglasses compartment and pills suspected to be crystal methamphetamine in the panel compartment of the driver's door supplied probable cause for officers to search the remainder of the vehicle. Simmons does not contest this point.

Police officers reasonably suspected that Simmons violated a municipal code provision, and thus they lawfully detained Simmons. Simmons' consent permitted Officer Vargas to conduct a limited search of the vehicle's sunglasses compartment for Simmons' identification. The evidence found in this initial search provided probable cause for officers to search the remainder of the vehicle. Accordingly, the trial court did not err in denying Simmons' motion to suppress evidence.

### III. DISPOSITION

The judgment is affirmed.

---

Supreme Court has held that "the desire to obtain a driver's identification following a traffic stop does not constitute an independent, categorical exception to the Fourth Amendment's warrant requirement." (*Lopez*, *supra*, 8 Cal.5th at p. 357.)

_____
Greenwood, P. J.

WE CONCUR:

_____
Danner, J.

_____
Bromberg, J.

H052058 People v. Simmons